Sam CULBERTSON, et al., Plaintiffs,

v.

**FREIGHTLINER CORPORATION,**
et al., Defendants.

**No. CV–N–96–490–DWH (PHA).**

United States District Court,
D. Nevada.

March 23, 1999.

Roger J. Bennett, Virgil D. Dutt, Fernley, NV, for plaintiffs.

C. James Georgeson, Georgeson, Thompson & Angaran, Reno, NV, for Freightliner, defendant.

Linda J. Linton, Perry & Spann, Reno, NV, for Knoedler and Designer Metal Products, defendants.

## ORDER

HAGEN, District Judge.

Before the court are defendants' objections (# s 97, 98, 101) to the magistrate judge's report and recommendation (# 95) that defendants' motions for summary judgment (# s 57, 61) be denied in part and granted in part and that the motion (# 58) to exclude expert testimony filed by defendant Knoedler Manufacturers, Inc. ("Knoedler") and Designer Metal Products, Inc. ("Designer") be denied. Pursuant to 28 U.S.C. § 636(b)(1), this court is required to review *de novo* the portions of the recommendation to which an objection is made. This will be done below. Because neither party has objected to the

---

recommendation that defendants' summary judgment motions should be granted with respect to all of plaintiffs' claims, except for claims based on seat design defect (under both theories of strict products liability and negligence), failure to warn about the seat, and loss of consortium, that part of the magistrate judge's report and recommendation will be adopted without further discussion.

Plaintiff Sam Culbertson claims to have injured his back when his tractor seat "bottomed out" as he drove over an uneven spot in the highway. He blames this injury on a defect in the seat of the tractor he was driving for Freightliner, but has no evidence of that except for the testimony of his expert witness, Lindley Manning, a mechanical engineer. Thus Manning's is the only testimony supporting Plaintiffs' remaining claims of design defect and failure to warn and, in turn, the loss of consortium claim. If his testimony is excluded there will be no genuine issue of fact for trial and defendants will be entitled to judgment as a matter of law. F.R.Civ.P 56(c).

Because the court considers Manning's opinion unreliable, it will be excluded. *See* FRE 104(a).

Mr. Manning was asked at his deposition what opinions he had developed. He answered

"Well, I believe from what I know to date that for his seat to bottom out the way he mentioned ... that there probably was some sort of failure within the seat, and the most probable thing would be leakage, and thereby failure, or failure to perform as intended, of the shock-absorber device in the seat."

(# 57) Exhibit C, p. 38.

He opined further that

[t]here should be a little give to the [rubber bumper that serves as a] stop so you wouldn't get the sudden jolt at the bottom of travel. This could be a progressively wound coil spring, or perhaps a conical spring that has a progressive spring rate, that is very inexpensive, that would be easy to install and would act much like a buffer at the bottom of an elevator, the buffer. A failsafe cushion like that would be cheap, easy to put in, within well-known technology, and would at least prevent some of these accidents.

*Id.*, pp. 42–43.

The court adopts the following summary by defendants of other portions of his deposition testimony:

[He] has never given expert testimony with respect to the functioning of air ride seats or the functioning of the suspension of a tractor as it relates to an air ride seat. In addition, [he] has never been involved in the design or modification of the suspension of an air ride seat. He has never seen the seat in question. He never reviewed the maintenance records of the seat in question, and he did not review the deposition testimony of any of the witnesses in this case, including that of plaintiff or of the plaintiff's employer's Vice President of Maintenance and purchasing. [He] spent one hour looking at the tractor in question, but the seat in question was not in the tractor. A comparable seat was inspected by Mr. Manning for one-half an hour, but only photographs were taken. [He] has not performed any tests, reviewed any literature or texts in preparation for any opinions he may develop in this case. He has not prepared any reports or correspondence relating to this case. [He] merely has reached a conclusory opinion that it was likely that the shock absorbers failed because he thought so, and that there should have been some fail-safe method designed, although he has never designed such a device. [He] has no scientific, mechanical or other data to back up his opinion. He does not cite any industry standards, manufacturing data, outside studies, documentary research, published articles or treatises that would support his opinion.... [He] has not purposely failed seats, and he has not even sat in one when the air was in the seat to see how

it works. He has not run a control group and he has not conducted research.

Freightliner's Objection (# 101), pp. 6–7.

Defendants argue that this court must assess the reliability of Manning's opinion by use of the four *Daubert*[1] general observations, or factors, to Manning's opinion, *i.e.*, has his concept been tested? has it been subjected to peer review? what is its known rate of error? has it been generally accepted?

■ This argument correctly was rejected by the magistrate judge because *McKendall v. Crown Control Corp.*, 122 F.3d 803, 806 (9th Cir.1997) made the *Daubert* factors inapplicable to other than scientific experts. Until today. Today the Supreme Court announced its decision in *Kumho Tire Company v. Carmichael*, 1999 WL 152275 (U.S.). Writing for the Court, Justice Breyer said

> We conclude that Daubert's general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge. See Fed. Rule Evid. 702. We also conclude that a trial court may consider one or more of the more specific factors that Daubert mentioned when doing so will help to determine the testimony's reliability. But, as the Court stated in Daubert, the test of reliability is 'flexible,' and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate determination. See *General Electric Company v. Joiner*, 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508

(1997) (courts of appeal are to apply 'abuse of discretion' standard when reviewing district court's reliability determination).

*Id.* p. 3.

■ Plaintiffs' response (# 103) offers affidavits of Richard McLay, PhD, and H. Boulter Kelsey, Jr., P.E., who opine that Manning's principles and reasoning are consistent with standards of mechanical engineering. The knowledge Manning offers to the trier of fact, however, is no more than his opinion on how one might cure a defect that he assumed, but never showed, existed. At best his testimony is but an educated speculation. It would not help the jury understand the evidence or assist them in determining a fact in issue. The unfair prejudice to defendants of the admission of such speculation likely would cause is substantial while its probative value is nil or nearly so. See FRE 403. It is excluded as unreliable. *See* FRE 104(a).

This leaves plaintiffs with no evidence supporting the existence of genuine issue for trial. The magistrate judge's recommended denial of defendants' motions is rejected.

**IT IS THEREFORE ORDERED** that summary judgement is granted to defendants on all claims. Let judgment be entered accordingly.

---

**1.** *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593–94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).